# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

**FILED**

Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia
By lbarnard at 2:23 pm, Mar 06, 2008

In the matter of:          )
                           )          Chapter 13 Case
NATHANIEL HEYWARD          )
                           )          Number <u>06-40107</u>
          *Debtor*          )

## MEMORANDUM AND ORDER

### FINDINGS OF FACT

Debtor filed Chapter 13 on January 31, 2006. Prior to confirmation, Debtor reported that he would have monthly income of $0 which is below the $45,775.00 applicable median family income in Georgia. <u>Chapter 13 Statement of Current Monthly and Disposable Income</u>, Dckt.No. 8 (February 2, 2006). Therefore, the "applicable commitment period" is 3 years or 36 months. *See* 11 U.S.C. § 1325(b)(4).

On March 21, 2006, this Court confirmed Debtor's plan of payments of $232 per month for 60 months. <u>Trustee's Report of Confirmation</u>, Dckt. No. 32 (October 19, 2006). The payments were then raised to $288 per month starting in October 2007. <u>Consent Order</u>, Dckt.No. 40 (October 9, 2007). The plan proposed to pay a dividend to unsecured creditors of 1% or $300. <u>Chapter 13 Plan</u>, Dckt.No. 2 (January 31, 2006).

On November 9, 2007, Debtor filed a Motion to Incur Debt for a Reverse

✎AO 72A
(Rev. 8/82)

Mortgage in order to "use the proceeds to pay off both mortgages and his Chapter 13 in full." Motion to Incur Debt for Reverse Mortgage, Dckt.No. 43 (November 9, 2007). After notice and a hearing, this Court entered an order granting the motion to incur a reverse mortgage but reserved the ruling on using the proceeds to pay off the mortgages and reduce/pay off the Chapter 13 plan for a future order. Order Granting Motion to Incur Debt, Dckt.No. 56 (December 18, 2007). As of February 19, 2007, Debtor has been pending for 23 months, has paid $3,304.00, and still owes a balance of $12,572.00 on payments projected at the time of confirmation.

The issue raised by the parties is the interpretation of §1325(b) and whether it requires Debtor to fund a plan for a full term of 36 months or whether Debtor can pay off his plan early by paying the balance remaining on a confirmed plan. The Trustee argues that the "applicable commitment period" in 11 U.S.C. §1325(b)(4) establishes a temporal period of three years during which Debtor must make periodic payments. The Trustee contends that, based upon the plain language of 11 U.S.C.§1325(b)(4)(B), the only way a plan can be reduced to a shorter time than the "applicable commitment period" is if all allowed unsecured claims are paid in full. Letter Brief, Dckt.No. 62 (February 4, 2008). Debtor disagrees with the Trustee's interpretation of "applicable commitment period" and argues that the term functions as a multiplier in computing a dollar amount rather than as a temporal requirement for plan duration. Debtor contends that as long as he pays the unsecured creditors his disposable income multiplied by the number of months remaining in the "applicable commitment period," he can pay his Chapter 13 plan early and receive a discharge. Letter

<u>Brief</u>, Dckt.No. 61 (February 1, 2008).

## CONCLUSIONS OF LAW

To alter the terms of his plan by early pay-off, Debtor would have to modify his current plan under 11 U.S.C. §1329. Section 1329 states:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to...
>
> (2)     extend or reduce the time for such payments . . .
>
> (b)(1) Section 1322(a), 1322(b), and 1323© of this title and *the requirements of section 1325(a) of this title apply* to any modification under subsection (a) of this title.
>
> 11. U.S.C. §1329 (emphasis added).

Section 1325(a) provides a list of criteria that must met in order for the court to approve a plan. These prerequisites for confirmation, however, are qualified by §1325(b)(1)(B):

> (b)(1) If the trustee of the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan...
>
> (B) the plan provides that all of the debtor's *projected disposable income* to be received in the *applicable commitment period* beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B)(emphasis added)

Under the plain meaning of this clause, modified plans, which must be judged by §1325, cannot be confirmed over objection unless, at the time of modification, a debtor's disposable income is paid to the trustee for the remainder of the commitment period. The "applicable commitment period" is defined by § 1325(b)(4). If this section is triggered, §1325(b)(4) provides (1) that the "applicable commitment period" shall be three years; (2) that if the debtor's annualized "current monthly income" is higher than the median family income for families with the same number in the household, the "applicable commitment period" is five years; or (3) that if the plan proposes to pay allowed unsecured claims in full, the plan may be less than three or five years, whichever is applicable. *See* 11 U.S.C. §1325(b)(4).

Bankruptcy courts have disagreed on the proper interpretation of 11 U.S.C. §1325's "applicable commitment period" requirement. The majority view is that, as to the treatment of unsecured creditors, the phrase "applicable commitment period" refers to a period of time and is not merely a multiplier used to determine the amount of distribution to unsecured creditors. Under this view, Debtor may not pay the plan in full until the entire 36-month applicable commitment period has elapsed, unless Debtor pays all the unsecured creditors the entire amount of their claim. *See, e.g.,* In re Nance, 371 B.R. 358, 369 (Bankr.S.D.Ill. 2007); In re Grant, 364 B.R. 656, 663 (Bankr.E.D.Tenn. 2007); In re Frederickson, 368 B.R. 825, 829-30 (Bankr.E.D.Ark. 2007)(in dicta); In re Luton, 363 B.R.

96, 101 (Bankr.W.D.Ark. 2007); In re Slusher, 359 B.R. 290, 305 (Bankr.D.Nev. 2007); In re Cushman, 350 B.R. 207, 212-13 (Bankr.D.S.C. 2006); In re Girodes, 350 B.R. 31, 35 (Bankr.M.D.N.C. 2006); In re Davis, 348 B.R. 449, 455-57 (Bankr.E.D.Mich. 2006); In re Gress, 344 B.R. 919, 923 (Bankr.W.D.Mo.2006); In re Dew, 344 B.R. 655, 661 (Bankr.N.D.Ala. 2006); In re Schanuth, 342 B.R. 601, 607-08 (Bankr.W.D.Mo. 2006); In re McGuire, 342 B.R. 608, 615 (Bankr.W.D.Mo. 2006); In re Alexander, 344 B.R. 742, 750-51 (Bankr.E.D.N.C. 2006); In re Crittendon, slip op., 2006 WL 2547102, at *4-5 (Bankr.M.D.N.C. Sept. 1, 2006).

The minority view argues that the "applicable commitment period" phrase relates to the projection and calculation of a fixed sum, which is based on a debtor's disposable income multiplied by the length of the "applicable commitment period" for that debtor. Thus, under this view, this sum may be paid in less than 36 months for below-median income debtors or in less than 60 months for above-median income debtors without violating § 1325(b)(4)(B). See e.g., In re McGillis, 370 B.R. 720, 734 (Bankr.W.D.Mich. 2007); In re Swan, 368 B.R. 12, 23-27 (Bankr.N.D.Cal. 2007); In re Brady, 361 B.R. 765, 776-77 (Bankr.D.N.J. 2007); In re Fuger, 347 B.R. 94, 101 (Bankr.D.Utah 2006); In re Kagenveama, 2006 Bankr.LEXIS 2759, at *8 (Bankr.D.Arizona 2006).

I agree with the majority view for the following four reasons. First, the express language of the statute clearly indicates that Debtor must perform his plan for a

minimum of three years.[1] "The starting point in any case involving the meaning of a statute [] is the language of the statute itself." Group Life & Health Ins.Co. v. Royal Drug Co., 440 U.S. 205, 210, 99 S.Ct. 1067, 1073, 59 L.Ed.2d 261 (1979). "In construing a federal statute it is appropriate to assume that the ordinary meaning of the language that Congress employed 'accurately expresses its legislative purpose.'" Mills Music, Inc. v. Snyder, 469 U.S. 153, 164, 105 S.Ct. 638, 645, 83 L.Ed.2d. 556 (1985)(quoting Park 'N Fly Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 194, 105 S.Ct. 658, —, 83 L.Ed. 582). "[F]or where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989)(quoting Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)).

"[T]he strongest argument supporting the majority view is the unambiguous text... that provides a plan may be shorter than the applicable commitment period only if

---

[1] The legislative history of §1325(b)(1)(B) also supports the majority view. The House Report relevant to this section states:

> *Chapter 13 Plans to Have a Five-Year Duration in Certain Cases.* Paragraph (1) of §318 of the Act amends Bankruptcy Code §§ 1322(d) and 1325(b) to specify that a chapter 13 plan may not provide for payments over a period that is not less than five years if the current monthly income of the debtor and the debtor's spouse combined exceed certain monetary thresholds . . . . The applicable commitment period may be less if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

> In re Slusher, 359 B.R. at 303(quoting H.R. REP. NO. 109-31, pt. 1, 1st Sess. 79 (2005), U.S.Code Cong. & Admin. News 2005, pp. 88, 146); see also In re Cushman, 350 B.R. at 213; In re Davis, 348 B.R. at 457.

"The title of this section of the House Report indicates that the amendments to §1325(b) were intended to address the length of Chapter 13 plans – not merely to create a multiplier to be used for determining the amount of plan payments." In re Nance, 371 B.R. 369-70.

unsecured creditors are paid in full." <u>In re Luton</u>, 363 B.R. at 101. "Why would Congress include this provisions if all that was required of a chapter 13 debtor was to pay a set amount of money under the plan? Under the monetary view, Section 1325(b)(4)(B) is rendered at best a tautology, and at worst entirely surplusage." <u>In re Slusher</u>, 359 B.R. at 303.

The term "applicable commitment period" "uses a word with temporal meaning: 'period' means a 'chronological division,'""length of time, "portion of time," or a "length of existence." <u>In re Schanuth</u>, 342 B.R. at 607; <u>In re Slusher</u>, 359 B.R. at 301; <u>In re Davis</u>, 348 B.R. at 456; <i>see also</i> <u>In re Grant</u>, 364 B.R. at 663. "Similarly, the word 'commitment' is defined in Webster's as 'the act of doing or performing something' and is also defined as 'the obligation or pledge to carry out some action.' The terms 'commitment' and 'period' are therefore terms that by their ordinary, everyday meanings contemplate or suggest action by the debtor over a period of time." <u>In re Davis</u>, 348 B.R. at 456(internal citations omitted).

Subsection (b)(4) "speaks only in terms of specific time increments i.e., three years, five years, or fewer years in the event that allowed unsecured claims will be paid in full." Thus, "there are no terms indicating that the three or five year time periods expressly set forth therein are to be interpreted as anything other than specific time periods for the length of the 'applicable commitment period.'"<u>In re Grant</u>, 364 B.R. at 663; <i>see also</i> <u>In re Nance</u>, 371 B.R. at 369; <u>In re Cushman</u>, 350 B.R. at 212; <u>In re Dew</u>, 344 B.R. at 661; <u>In re Davis</u>, 348 B.R. at 455; <u>In re Girodes</u>, 350 B.R. at 35; <u>In re Slusher</u>, 359 B.R. at 301-02.

Second, "[i]f Congress wanted the applicable commitment period to function as a multiplier, it could have stated so in the statute." In re Alexander, 344 B.R. at 751; *see also* In re Nance, 371 B.R. at 370; In re Davis, 348 B.R. at 456-57. In other provisions of the Bankruptcy Code, including other parts of §1325, Congress explicitly implemented multipliers. *See e.g.,* 11 U.S.C. §§ 507(a)(5)(B)(i)("the number of employees covered by each such plan multiplied by $10,000"); 704(b)(2); 707(b)(2)(A)(I) ("if the debtor's current monthly income, reduced by the amounts determined under clauses (ii),(iii), or (iv), and multiplied by 60 is not less than"); 707(b)(2)(B)(iv); 707(b)(6); 707(b)(7)(A); 1322(d)(1); 1322(d)(2); 1325(b)(3) ("if the debtor has current monthly income when multiplied by 12"); 1325(b)(4)(A)(2); 1326(b)(3)(B)(ii). The Bankruptcy Court of the District of Nevada explained:

> From these sections, this court can only conclude that, at least in this area, Congress says what it means and means what it says-if it wants to use a multiplicand, it will say so, usually with the words "multiplied by"; conversely, if Congress uses the word "period," it means just that-a temporal division. Indeed, "the use of a particular phrase in one statute but not in another 'merely highlights the fact that Congress knew how to include such a limitation when it wanted to.'"
>
> In re Slusher, 359 B.R. at 302(*citing* In re Donald, 343 B.R. 524, 537 (Bankr.E.D.N.C. 2006)(*quoting* In re Coleman, 426 F.3d 719, 725 (4th Cir. 2005)); In re Meyer, 2006 WL 3505379, at *8 (Bankr.D.N.M. 2006)).

Third, "treating the term 'applicable commitment period' as a multiplicand would negate much of Section 1329's utility." The Bankruptcy Court of the District of Nevada stated:

> Section 1329 provides a process for any interested party to seek modification of the chapter 13 plan after confirmation but "before the completion of payments" under the plan. 11 U.S.C. §1329(a). This section is bolstered by other financial reporting requirements added in BAPCPA, such as Section 521(f)'s requirement that the debtor submit annual tax returns on request to any interested party, allowing those parties to determine if the debtor's financial circumstances have changed sufficiently to justify seeking modification. But if the debtor manages to produce a lump-sum payoff to the trustee before the trustee or another interested party seeks modification, all interested parties could be barred at the time from modifying the plan. Once his plan is confirmed, a debtor could simply pay off the remaining monetary balance though a refinancing of a homestead interest or some other exempt source, obviating the need for further financial review and preventing interested parties from seeking modification based on the changed circumstances... 'This result would be of particular benefit to wealthy debtors who might have exempt reserves, such as IRAs, from which to fund immediate completion of a chapter 13 plan upon confirmation with no regard to future increases in income.'"

> In re Slusher, 359 B.R. at 304-05; see also In re Davis, 348 B.R. at 457-58.

Fourth, the minority view "represents a gross departure from pre-BAPCPA practice that is not justified by the language or structure of the statute." In re Schanuth, 342 B.R. at 607. Prior to BAPCPA, Section 1325(b)(1)(B) established the plan length for a

Chapter 13 by stating that if a trustee or allowed unsecured creditor objected to the plan, the court could not approve it unless the plan provided that "all of the debtor's projected disposable income to be received in the three-year period beginning on the date of the first payment" went to "make payments under the plan." 11 U.S.C. §1325(b)(1)(B) (2005). Thus, the only changes to §1325(b)(1)(B) made by BAPCPA were substituting "applicable commitment period" for "three-year period" and adding the words "to unsecured creditors" between "payments" and "under."

"Before BACPA, although a few courts held that debtors who received a windfall could pay off the amounts owing under their plan before the three-year period ended without paying unsecured creditors the full amount of their claims,[2] most courts construed the Section 1325(b)(1)(B) 'three-year period' as a temporal minimum during plan confirmation." In re Slusher, 359 B.R. at 302; see Cohen v. de la Cruz, 523 U.S. 213, 221, 118 S.Ct. 1212, 140 L.Ed.2d 341 ("We... will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure); accord In re Nance, 371 B.R. at 370; In re Davis, 348 B.R. at 455-56; In re Shanuth, 342 B.R. at 606-08; In re McGuire, 342 B.R. at 615; In re Girodes, 350 B.R. at 34; see also, e.g., In re Keller, 329 B.R. 697, 700 (Bankr.E.D.Cal. 2005). As explained by the Bankruptcy Court of the Southern District of Illinois,

---

[2]See e.g., Matter of Casper, 154 B.R. 243, 246 (N.D.Ill. 1993); In re Richardson, 283 B.R. 783, 801-02(Bankr.D.Kan. 2002)("If after obtaining confirmation of a plan, a debtor receives a windfall and proposes to pay the total projected disposable income before the end of the plan term, the trustee should accept the money, distribute it according to the plan, and grant the debtor a discharge."); In re Smith, 237 B.R. 621, 626 (Bankr.E.D.Tex. 1999).

Under the prior version of §1325(b)(1), a debtor generally could not exit bankruptcy prior to the expiration of 36 months. 11 U.S.C. §1325(b)(1)(B)(2004). The revisions to this section appear to have merely substituted an "applicable commitment period" for the previously required three-year "best efforts" period. This is evidenced in the express language of §1325(b)(4)(B), which clearly states that a debtor may propose a plan that is less than three or five years, whichever is applicable, *only* if unsecured creditors are paid in full. Like the "best efforts" requirement under prior law, §1325(b)(4)(B) imposes a minimum plan duration, unless full repayment is made to unsecured creditors in a shorter time. Obviously, BAPCPA has precipitated many changes in Chapter 13 practice. However, this Court does not believe that the elimination of a minimum plan length in cases where a debtor is not proposing to pay 100% to their unsecured creditors is one of those changes.

In re Nance, 371 B.R. at 370.

Therefore, I find that §1325(b)(4)(B) requires Debtor, as a below-median income Chapter 13 debtor, must continue to make payments for thirty-six (36) months, unless he pays his creditors 100% of their allowed claims over a shorter period of time.

## O R D E R

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that the Debtor is required to continue to make payments for thirty-six (36) months, unless he pays his creditors 100% of their allowed claims over a shorter period of time.

IT IS FURTHER ORDERED that the Debtor's Motion to pay off the case early is denied.  Debtor IS ORDERED to report on the status of his reverse mortgage transaction and an accounting of funds received and disbursed by March 21, 2008.

Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 5th day of March, 2008.